966 So.2d 497 (2007)
PALAZZO LAS OLAS GROUP LLC, Appellant,
v.
CITY OF FORT LAUDERDALE, Florida, a Florida Municipal Corporation; Fort Lauderdale Community Redevelopment Agency, a Florida entity; Jim Naugle; Dean Trantalis, Christine Teel; and Cindi Hutchinson, Appellees.
No. 4D06-2130.
District Court of Appeal of Florida, Fourth District.
October 17, 2007.
*498 W. Kent Brown, John R. Hargrove and Albert L. Frevola of Gordon Hargrove & James, P.A., Fort Lauderdale, for appellant.
Robert H. Schwartz and Alain E. Boileau of Adorno & Yoss LLP, Fort Lauderdale, for appellees.
STEVENSON, J.
In this appeal, Palazzo Las Olas Group, LLC ("Palazzo") challenges an order dismissing its twelve-count complaint against the City of Fort Lauderdale, the Fort Lauderdale Community Redevelopment Agency ("CRA"), the mayor, and several commissioners, wherein Palazzo sought declaratory and injunctive relief and damages. The trial court dismissed Palazzo's complaint, with prejudice, after concluding that Palazzo's sole remedy was the filing of a petition for certiorari, challenging the City Commission's decision to deny site plan approval of a project that had been the subject of a detailed request for proposals and extensive negotiations and dealings between Palazzo and the City. We disagree that Palazzo's sole remedy lies in certiorari and, having concluded that the allegations of the complaint are at least minimally sufficient to state a cause of action with respect to all counts save VI (mandamus) and XII (specific performance), we affirm in part and reverse in part the order on appeal.
In November 2003, the Fort Lauderdale City Commission ("Commission") denied site plan approval for a redevelopment project on Las Olas Boulevard. Palazzo timely filed a petition for certiorari, challenging the Commission's decision. The petition for certiorari was resolved in favor of the City and no appeal was taken.
Simultaneous with the filing of the petition for certiorari, Palazzo filed a civil complaint. The amended version of that complaint named as defendants the City of Fort Lauderdale, the CRA, Mayor Jim Naugle, and Dean Trantalis, Christine *499 Teel, and Cindi HutchinsonCity Commissioners and members of the CRA. The Amended Complaint is more than fifty pages and alleges in great detail the circumstances surrounding the City's determination to redevelop the Central Beach area, which includes Las Olas Boulevard, and the communications and negotiations between Palazzo and the City regarding the redevelopment.
More specifically, the Amended Complaint alleged the following:
(1) a detailed request for proposals (RFP) for the development of a mixed-use "urban beach village" was issued by the City in 2001;
(2) Palazzo's proposal was accepted by the City in August of 2001;
(3) the language and specificity of the RFP were such that, upon the award of the same to Palazzo and its acceptance, a contract existed between Palazzo and the City for the redevelopment of the Las Olas lot in accordance with the terms of the RFP;
(4) it was "understood" that Palazzo "would require relief from potentially applicable building-dimension or location limitations, and the RFP made it clear that such relief would be forthcoming";
(5) from August 2001 through the fall of 2003, the City and Palazzo spent countless hours addressing the details of the project, with Palazzo making several modifications at the City's request;
(6) in the summer of 2002, the City allowed Palazzo to begin the permitting process;
(7) in fall of 2002, the City approved the lease of a portion of the lot to Palazzo so Palazzo could construct a sales center;
(8) Palazzo constructed the sales center, began marking the residential units, and produced nearly $100 million in pre-sales;
(9) by March 2003, the City's Development Review Commission and the City Planning and Zoning Board had approved Palazzo's site plan;
(10) in late 2002 and early 2003, as a consequence of a changing political climate, the Mayor and two newly-elected commissioners "undertook efforts to derail the Project," including efforts by the Mayor to delay the Commission's vote on the site plan until after the elections;
(11) "[t]he City, the Agency [CRA], the Mayor and certain Commissioners purposely and in bad faith routinely confused and switched their respective roles in accomplishing a grossly improper objective";
(12) in November 2003, a hearing was held and the Commission denied site plan approval for the project;
(13) "[a]lthough from the beginning the City indicated that . . . [certain building] limitations would not apply and that any needed relief would be granted, and although the City ordered Palazzo to design a project that would not comply with such limitations, finally the City turned around and used the same non-compliant features that it ordered to be included in the first place as a basis for attacking the Project"; and
(14) Palazzo "had spent over two years and more than $5,000,000 . . . in good faith reliance on the City's actions."
The complaint asserted twelve causes of action.
Count I sought a declaratory judgment that (1) as a consequence of the City's actions and communications with Palazzo, the City was contractually required to approve the site plan and/or equitably estopped from denying site plan approval and (2) the City's actions in denying site plan approval were void as they were in violation of the Sunshine Law. Additionally, *500 in count I, Palazzo sought an injunction precluding the City from denying it site plan approval. Count II alleged that an enforceable contract had arisen as a consequence of the RFP and the subsequent approvals and negotiations and that the City and CRA had breached the same, seeking specific performance of the contracts and agreements and more than $40 million in damages. Counts III and IV, asserting equitable and promissory estoppel, respectively, alleged justifiable reliance on the City's actions and agreements and sought to estop the City from denying Palazzo site plan approval and damages. Count V sought declaratory and injunctive relief pursuant to section 163.3215, Florida Statutes, which precludes local governments from acting in a manner contrary to their Comprehensive Plan. Count VI sought a writ of mandamus compelling the City to approve Palazzo's site plan and execute the necessary development documents. Counts VII, VIII, and IX, asserted against all defendants, alleged interference with contract, interference with an advantageous business relationship and conspiracy and sought damages. Count X alleged the City's and CRA's actions were sufficient to support the imposition of a contract implied in law and that the City and CRA had been unjustly enriched by Palazzo's sharing of confidential and proprietary information concerning redevelopment of the lot. Count XI sought the imposition of a constructive trust with respect to the "confidential, trade secret, and proprietary information and expertise shared by Palazzo." Finally, count XII sought specific performance of the sales center lease.
The defendants filed a motion to dismiss. Their principal argument was that the Amended Complaint was subject to dismissal in its entirety since the exclusive remedy available to Palazzo, the developer/applicant, was to file a petition for writ of certiorari seeking review of the Commission's denial of site plan approval. Additional arguments in support of dismissal were made with respect to a number of the counts.
The trial court dismissed the twelve-count complaint in its entirety, save that portion of count I alleging a violation of the Sunshine Law. In so doing, the court reasoned that all of Palazzo's common law claims derived from quasi-judicial actions, and more specifically, the Commission's denial of Palazzo's site plan, and consequently, the filing of a petition for certiorari was its exclusive remedy. With respect to count VI, seeking a writ of mandamus, the trial court made the additional finding that such claim was subject to dismissal as mandamus is a remedy designed to coerce or command the performance of a ministerial act and, despite Palazzo's claims to the contrary, the Commission's approval of the site plan was not merely a ministerial act. And, finally, the trial court concluded that counts VII through IX, alleging interference with a contract, interference with an advantageous business relationship, and conspiracy, could not survive because, as a matter of law, the alleged actions "do not arise to the level of bad faith, malicious purpose or a manner exhibiting wanton and willful disregard of human rights, safety or property," i.e., the level of bad faith necessary to avoid section 768.28(9)'s sovereign immunity. In the order, the trial court found that, with the exception of count I's allegations concerning the Sunshine Law, Palazzo could not amend its claims so as to state a cause of action. When Palazzo indicated it would not amend count I, a final order of dismissal with prejudice was entered. This appeal followed.
In its order of dismissal, the trial court cited Webb v. Town Council of Town *501 of Hilliard, 766 So.2d 1241, 1243 (Fla. 1st DCA 2000), for the proposition that "[l]ocal government decisions pertaining to building permits, site plans, special zoning exceptions, and other development orders generally are deemed quasi-judicial in nature, thus subject to certiorari review." Relying upon this proposition of law, the trial court then concluded that those aggrieved by a local government's decision regarding a permit, site plan, or other development order are limited to certiorari review and are foreclosed from bringing any additional civil claim against the government entity based upon its conduct and actions during the permitting process. While we agree that Palazzo could only obtain a reversal of the Commission's actual decision denying it site plan approval via a petition for writ of certiorari, we do not believe that this bars the pursuit of other civil remedies.
First, during certiorari proceedings seeking to challenge the denial of the site plan, the issues that can be addressed are extremely limited. In such a proceeding, the circuit court would be limited "to determin[ing] (1) whether the agency afforded procedural due process; (2) whether the agency observed the essential requirements of law; and (3) whether competent, substantial evidence supported the agency's findings and judgment." See, e.g., Powell v. City of Sarasota, 953 So.2d 5, 6 (Fla. 2d DCA 2006). Consequently, the circuit court could never reach issues concerning whether the City had contractually agreed to waive certain permitting requirements as alleged by Palazzo or whether, based upon the City's actions, the City was equitably estopped from denying site plan approval. Cf. Citrus County v. Fla. Rock Indus., Inc., 726 So.2d 383, 387 (Fla. 5th DCA 1999) (holding "common law issues" concerning whether County was estopped from denying permit because of its acquiescence over the years, the permit applicant's good faith reliance on actions of County, and the permit applicant's commitment of resources had no place in administrative permitting process or in certiorari review of decision denying permit).
Second, much of what underlies Palazzo's civil claims, and particularly counts I and III, is an allegation that as a consequence of the City's own actions it is now estopped from denying site plan approval. Florida's courts have long recognized that local government entities must deal fairly with their citizens and that, in the absence of fair dealing, the doctrine of equitable estoppel may be invoked. Thus, in Hollywood Beach Hotel Co. v. City of Hollywood, 329 So.2d 10 (Fla.1976), where the City initially granted a zoning change to the petitioners, but, following a political change, spent three years delaying and attempting to rescind the change, our supreme court wrote:
Every citizen has the right to expect that he will be dealt with fairly by his government. "Unfair dealing" by a municipality can also serve as the basis for the invokement of equitable estoppel. While a City Commission certainly possesses the prerogative of deciding to defer action on such a proposal over a long period of time, it must assume the attendant responsibility for the adverse effect it knows or should know its deliberate inaction will have upon the parties with whom it is dealing.
Id. at 18 (citations and footnote omitted). See also Town of Largo v. Imperial Homes Corp., 309 So.2d 571, 573 (Fla. 2d DCA 1975) ("A citizen is entitled to rely on the assurances and commitments of a zoning authority and if he does, the zoning authority is bound by its representations, whether they be in the form of words or deeds. . . ."); City of N. Miami v. Margulies, 289 So.2d 424, 425 (Fla. 3d DCA 1974) *502 (stating "[a]ll governments derive their power from the people" and "[i]n return for vesting that power in the government the people should be able to expect stability and fair play from their government").
Consistent with these principles, there are Florida cases suggesting that a civil suit will lie against a governmental entity where it has engaged in alleged unfair dealing. In Sundstrom v. Collier County, 385 So.2d 1158 (Fla. 2d DCA 1980), the owner of real property obtained a building permit and spent money to commence work on the project. Thereafter, the zoning board issued a stop-work order. The property owner failed to timely seek certiorari review and, instead, filed a petition for writ of mandamus. The trial court dismissed the petition with prejudice as a consequence of the owner's failure to timely seek review of the order via the filing of a petition for writ of certiorari. The appellate court agreed that mandamus was not the appropriate remedy, but nonetheless reversed the dismissal with prejudice because the owner should have been afforded the opportunity to "state a cause of action in equity for equitable estoppel, declaratory relief, or an injunction." Id. at 1159. And, Florida Rock Industries, 726 So.2d at 383, Town of Largo v. Imperial Homes Corp., 309 So.2d at 571, and Town of Longboat Key v. Mezrah, 467 So.2d 488 (Fla. 2d DCA 1985), each involved the circumstance where a property owner/applicant brought a civil action for declaratory relief and/or an injunction, asserting that the governmental entities' prior conduct was such that it was estopped from taking the complained-of action. And, in Florida Rock Industries, the property owner simultaneously filed a petition for writ of certiorari, seeking review of the order on its application for determination of vested rights, and a civil complaint, seeking declaratory relief and alleging equitable estoppel. 726 So.2d at 386.
Having considered the above authorities and principals and the limitations of certiorari review, we hold that while any direct challenge seeking to overturn the Commission's decision denying site plan approval had to be sought via the filing of a petition for writ of certiorari, this did not preclude Palazzo from bringing a civil suit, wherein it sought relief on matters beyond those appropriately addressed during the certiorari proceeding. The trial court thus erred in dismissing Palazzo's Amended Complaint for this reason.
The only other grounds referenced by the trial court in the order dismissing the Amended Complaint with prejudice concern count VI and counts VII through IX. Count VI seeks a writ of mandamus compelling the City to approve the site plan and execute the necessary development documents. The trial court dismissed the claim as such a cause of action lies to compel the performance of a ministerial act and the act of approving or denying the site plan is not a ministerial act. We agree and thus affirm the dismissal with prejudice as to count VI.
Counts VII through IX assert claims for tortious interference with a contract, tortious interference with an advantageous business relationship, and conspiracy, respectively. The defendants insisted the claims could not stand (1) because they were predicated upon the Commissioners' actions in voting at a public meeting and such actions constituted the exercise of quasi-judicial powers and were thus absolutely immune, see Penthouse, Inc. v. Saba, 399 So.2d 456, 458 (Fla. 2d DCA 1981), and P.C.B. Partnership v. City of Largo, 549 So.2d 738 (Fla. 2d DCA 1989), and (2) because section 768.28(9)(a), Florida Statutes, affords government officers, agents, and employees immunity from suit unless their actions are taken in "bad faith *503 or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property" and the complaint failed to adequately allege such bad faith or malicious purpose. The trial court found that, as a matter of law, the complaint's allegations did not rise to the requisite level of bad faith or malicious purpose. We have reviewed the complaint's allegations and find them minimally sufficient to allege the kind of bad faith and malicious purpose necessary to seek to impose individual liability. The defendants' alternative claim that counts VII through IX must fail as they are predicated upon the Commissioners' actions in voting at a public meeting is also insufficient to support the dismissal of the counts as the claims are not predicated solely upon the act of voting.
Finally, apart from the specific findings in the trial court's order of dismissal, we have considered whether the allegations of the Amended Complaint are sufficient to state each of the twelve alleged causes of action and all the arguments advanced by the defendants in their motion to dismiss. With the exception of count XII, seeking specific performance of the sales center lease, we find the allegations of the Amended Complaint are minimally sufficient to state the alleged causes of action. In their motion to dismiss, the defendants insisted the allegations of count XII fail to state a cause of action because the count fails to allege a breach of the lease. In its response, Palazzo contended it did allege such a breach, i.e., that the City breached the lease by "threaten[ing] to stop honoring the lease's terms" and "threaten[ing] to shut down the . . . sales center"; that the prevention or hindrance of performance is a breach of the contract, see Sharp v. Williams, 141 Fla. 1, 192 So. 476, 480 (1939); and that the City's derailing of the project and threats hindered or prevented it from performing its contractual obligation to pre-sell condominium units. The fact of the matter, though, is that count XII does not actually allege that the City's threats have interfered with or prevented its performance of its contractual obligations under the lease. Rather, count XII alleges only that "[i]f the City shut down Palazzo's sales center, Palazzo would suffer additional lost condominium presales." Thus, as written, count XII is deficient and subject to dismissal. Such dismissal, though, should not have been with prejudice.
In sum, having reviewed the allegations of the Amended Complaint and all grounds advanced by the defendants in favor of dismissal, including those not specifically discussed herein, we reverse the dismissal with prejudice of counts I through V and of counts VII through XI. The dismissal of count XII is affirmed, but the order of dismissal should be amended to reflect that such dismissal is without prejudice.[1] And, finally, the dismissal with prejudice of count VI, purporting to state a cause of action for mandamus, is affirmed. We recognize that certain counts may be vulnerable to judgment on the pleadings or summary judgment, but we do not reach those issues in review of a dismissal for failure to state a cause of action. The order appealed is thus affirmed in part, reversed in part, and the matter remanded for further proceedings.
HAZOURI and MAY, JJ., concur.
NOTES
[1] Our reversal as to counts X, XI and XII may be of little practical import as Palazzo has indicated on appeal that it does not intend to pursue such claims absent the discovery of additional information.