DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOYCE BULLEN GAY** and **ADENA TESTA,**
Petitioners-Appellants,

v.

**JUPITER ISLAND COMPOUND, LLC,**
a Delaware limited liability company, and
**DOLPHIN SUITE, LLC,** a Florida limited liability company,
Respondents-Appellees.

Nos. 4D22-1007 and 4D22-1030

[April 12, 2023]

Consolidated petition for writ of certiorari and appeal of nonfinal order from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Gary L. Sweet, Judge; L.T. Case No. 432022CA000093.

Christopher J. Stearns of Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A., Fort Lauderdale, for petitioner-appellant Joyce Bullen Gay.

Jesse Panuccio, Stuart H. Singer and James Grippando of Boies Schiller Flexner LLP, Fort Lauderdale, for petitioner-appellant Adena Testa.

Ethan J. Loeb, Cynthia G. Angelos, Elliot P. Haney, Steven Gieseler, and Nicholas M. Gieseler of Bartlett, Loeb, Hinds & Thompson, PLLC, Tampa, for respondents-appellees.

***ON RESPONDENTS-APPELLEES' MOTIONS FOR REHEARING, REHEARING EN BANC, CLARIFICATION, AND CERTIFICATION***

GERBER, J.

We deny Respondents-Appellees' motion for rehearing, rehearing en banc, and certification. We grant Respondents-Appellees' motion for clarification. We substitute the following opinion for our original opinion. The following opinion corrects our earlier description of one allegation pled in the complaint, and adds discussion of one case before the conclusion. The following opinion's remainder mirrors the original opinion.

In an earlier order, we had consolidated the above-captioned case numbers 4D22-1007 and 4D22-1030 for consideration by the same panel. We now consolidate these cases for opinion purposes as well.

Case number 4D22-1007 arises from a public official's petition for a writ of certiorari. In that petition, the public official challenges the circuit court's nonfinal order denying the public official's motion to dismiss two landowners' action against her for tortious interference with business relationships. The public official argues she was entitled to dismissal at the pleading stage based on common law absolute immunity because, as pled in the landowners' complaint, her alleged tortious interference occurred in the scope of her official duties. We agree with the public official's reading of the landowners' complaint, and therefore grant her certiorari petition. We direct the circuit court, on remand, to vacate its prior order and issue a final judgment granting the public official's motion to dismiss the landowners' action against her with prejudice based on common law absolute immunity.

Case number 4D22-1030 arises from the public official's appeal of the same nonfinal order denying the public official's motion to dismiss, but alternatively based on immunity under section 768.28(9)(a), Florida Statutes (2020). *See* Fla. R. App. P. 9.130(a)(3)(F)(ii) ("Appeals to the district courts of appeal of nonfinal orders [include] those that … deny a motion that … asserts entitlement to immunity under section 768.28(9), Florida Statutes …."); § 768.28(9)(a), Fla. Stat. (2020) ("No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.").

Our holding in case number 4D22-1007—that the public official was entitled to dismissal with prejudice at the pleading stage based on common law absolutely immunity—moots the public official's argument in case number 4D22-1030 for immunity under section 768.28(9)(a).

However, to the extent our common law absolute immunity holding in case number 4D22-1007 may be subject to review which necessitates our reaching the merits in case number 4D22-1030, our holding in case number 4D22-1030 would have been that the public official was not entitled to dismissal at the pleading stage for immunity under section

768.28(9)(a).  Although the landowners' complaint pleads that the public official acted in the scope of her official duties, the landowners' complaint also pleads the public official acted in bad faith or with malicious purpose, thus precluding the public official from obtaining dismissal at the pleading stage based on immunity under section 768.28(9)(a).

We present this opinion in three parts:
1. The landowners' complaint;
2. Our certiorari review of the absolute immunity argument; and
3. Our rule 9.130 review of the section 768.28(9)(a) argument.

## 1. *The Landowners' Complaint*

Respondents-Appellees Jupiter Island Compound LLC and Dolphin Suite LLC (collectively, "the landowners") sued Joyce Bullen Gay ("the public official") for engaging in tortious interference while serving as the Town of Jupiter Island's Impact Review Committee chairperson.  The landowners also sued three Town residents—Adena Testa, Anne Geddes and Michael Brooks—who allegedly conspired with the public official to commit the tortious interference.  In the complaint, the landowners materially alleged, in pertinent part, as follows.

The landowners' properties are located in the Town of Jupiter Island and face the Atlantic Ocean.  The landowners intended to construct beach houses on their respective properties.  To properly submit their construction applications to the Town, the landowners retained various professionals whose services required payment on an hourly basis.  One of the landowners submitted their construction application to the Town in November 2020, and the other landowner submitted their application to the Town in March 2021.

The Town's Code of Ordinances required the landowners to obtain approval of their construction applications from the Town's appointed five-person Impact Review Committee ("the IRC").  The IRC's duty was to ensure the landowners' proposed construction:  (i) would not adversely affect the public interest; and (ii) would conform with the Town's neighborhood character.  IRC members sat as quasi-judicial officers and were required to disclose ex parte communications which they had with other people regarding the landowners' construction applications.  Those disclosures would have allowed the landowners to seek to disqualify IRC members for possible bias before having their construction applications determined.

When the landowners submitted their construction applications to the IRC, the public official was the IRC chair. According to the landowners' complaint, as the IRC chair, the public official's duties included: (i) helping other IRC members gather information to support or deny an application; (ii) setting the agenda, timing, and tone of any hearing; (iii) controlling the timing and participation of individuals at any hearing; (iv) testing other IRC members' viewpoints and shifting viewpoints of a hearing into a certain direction; and (v) delaying any hearing if she deemed it necessary.

The landowners' complaint further alleged that although the public official was aware the landowners' applications had satisfied the IRC's approval criteria, the public official embarked upon a series of acts with her three co-conspirators to delay the landowners' applications and interfere with their relationships with their retained professionals. The landowners' complaint detailed the public official's acts as follows.

Sometime in or before February 2021, the public official had oral communications with Testa and Geddes to discuss the goals of delaying, and preventing the approval of, the landowners' construction applications. Testa and Geddes then recruited Brooks to join the effort. Brooks initiated meetings between Testa, Geddes, and other Town residents to spread a false narrative surrounding the landowners' applications so that the public official could delay approval and increase the landowners' costs.

On March 4, 2021, the IRC held a hearing at which it initially considered the first landowner's construction application.

On March 6, 2021, further to the public official's personal efforts to prevent development on Jupiter Island, the public official, for apparent quid pro quo, emailed Testa to ask if she and her husband would make a substantial cash donation to an environmental organization with which the public official was involved.

On March 23, 2021, after the public official learned that the second landowner had submitted their construction application, the public official e-mailed Geddes and Testa with the following message:

> Just got my [IRC] package today … another house on the ocean parcel. Get to work. I will go down to prevent [approvals before the IRC] from happening. Hope you can help. Sorry about this but another set of letters may be necessary. …

Geddes and Testa then prepared letters making allegedly false statements that the landowners' planned construction would destroy

4

beach dunes on their parcels and would cause severe environmental harm to the Town.

Throughout the remainder of March 2021, the public official allegedly: (i) attended private, in-person meetings with Testa and Geddes; (ii) introduced Testa to other Town residents who could help provide financial support to further interfere with the landowners' construction applications; (iii) indicated she would try to sway other IRC members to delay and deny the applications; and (iv) directed Testa and Geddes to obtain other IRC members' commitments to deny the applications.

On April 1, 2021, the IRC held another hearing at which it considered both landowners' construction applications. The public official began the meeting by requiring all IRC members to disclose any ex parte communications which they had with other people regarding the landowners' construction applications. The public official falsely stated: "I … have had no ex parte communications."

On May 28, 2021, the public official e-mailed Testa, stating, in pertinent part:

> We have received our packs for the [June 3, 2021, IRC] meeting. Not a mention of any information from the residents who oppose the development. … Our information has been presented to us as if NOTHING is disputed. …
>
> Time to sue the town … I guess.

On June 3, 2021, the IRC held another hearing at which it considered both landowners' construction applications. During the disclosure period, the public official falsely stated: "I have had no ex parte communications. Let me just think. No, no ex parte communication. … I have spoken to no one." After discussion, the IRC voted 3-2 to approve the first landowner's application, with the public official being one of the "no" votes.

On August 5, 2021, the IRC held another hearing at which it considered the second landowner's application. During the disclosure period, the public official falsely stated: "I have had no ex parte communications." After discussion, the IRC voted 3-2 to approve the second landowner's application, with the public official being one of the "no" votes.

Testa—with Geddes' assistance—appealed to the Town Commission the IRC's approval of the first landowner's construction application. By this time, Brooks had been elected to the Town Commission.

5

On August 17, 2021, the Town Commission held a hearing to consider Testa's appeal. Brooks did not disclose his prior communications with Testa and Geddes before having been elected to the Town Commission. The Town Commission voted 4-1 to overturn the IRC's approval of the first landowner's construction application, with Brooks being one of the votes to overturn the approval.

Following the Town Commission's ruling, the landowners served various public records requests. Through these requests, the landowners discovered that the public official, Testa, Geddes, and Brooks had engaged in efforts to delay the landowners' construction applications in order to cause damages to the landowners during the IRC process.

The landowners' complaint then pled causes of action against—individually—the public official, Testa, Geddes, and Brooks.

The landowners' cause of action against the public official was for tortious interference. The landowners alleged, in pertinent part:

> [The public official] knew of the substantial business relationships that [the landowners] had with third party consultants and professionals, and that any delays of the IRC process would result in additional expenses and damages to [the landowners].

> Likewise, [the public official] knew that the [the landowners'] Applications met the IRC's criteria and that [the landowners] thereby had a legitimate expectation of procuring Town approval for the proposed developments.

> Rather than make the proper disclosures as required by law to allow [the landowners] to properly disqualify [the public official's] participation in any of the multiple IRC hearings, [the public official] elected to conceal such information and falsely represent her intentions to create, delay, and prevent any development on the [landowners'] waterfront parcels of land … by denying the [the landowners'] Applications.

> [The public official] knew of her ethical and legal obligations to disclose all communications with Testa and Geddes, and that acts of concealment would be illegal, as well as detrimental to [the landowners].

[The public official] elected to violate Florida and local laws so that she could continue to sit as the chair of the IRC and harm [the landowners].

There is no valid justification for [the public official's] behavior, specifically:

a. concealing the existence of highly relevant communications indicating her bias and impermissible motive surrounding the [landowners'] Applications;

b. lying to others at the IRC hearings whereupon [the public official] contended she did not have written communications with others; and

c. utilizing Testa as a tool to communicate with other IRC members surrounding the [landowners'] Applications in an effort to create delay and undue influence in a quasi-judicial setting.

Indeed, as detailed herein, [the public official] acted with malice and used improper means and methods to interfere with [the landowners'] substantial and legitimate business relationships and economic advantages.

As a result of [the public official's] activities, [the landowners] have been harmed.

(paragraph numbers omitted).

The landowners' individual causes of action against Testa, Geddes, and Brooks were for conspiracy to tortiously interfere. Those causes of action alleged that Testa, Geddes, and Brooks each had:

- "conspired with and assisted [the public official's] efforts at delaying and denying [the landowners'] Applications";

- "[been] part of an agreement with [the public official] to cause harm to [the landowners]";

- "substantially acted and assisted [the public official] in furtherance of her efforts to delay and damage [the landowners]"; and

7

- "acted with malice and used improper means and methods to interfere with [the landowners'] substantial business relationships."

The public official filed a motion to dismiss the landowners' action against her on the basis of: (1) common law absolute immunity; and (2) immunity under section 768.28(9)(a), Florida Statutes (2020). The circuit court entered an order summarily denying the public official's motion to dismiss, without providing any differentiation between the public official's common law absolute immunity argument and her argument for immunity under section 768.28(9)(a). From that order, the public official filed the cases now before us—her certiorari petition in case number 4D22-1007, and her rule 9.130 appeal in case number 4D22-1030.

## 2. *Our Certiorari Review of the Absolute Immunity Argument*

"[C]ertiorari [review] [is] an appropriate method of challenging the denial of a motion to dismiss based upon principles of immunity from suit." *Crowder v. Barbati*, 987 So. 2d 166, 167 (Fla. 4th DCA 2008). More specifically, certiorari review is available to challenge a lower court's denial of a motion to dismiss a tortious interference action, when the motion to dismiss is based on common law absolute immunity. *City of Stuart v. Monds*, 10 So. 3d 1134, 1134 (Fla. 4th DCA 2009).

As with all certiorari petitions, "[t]he petitioning party must demonstrate that the contested order constitutes (1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case, (3) that cannot be corrected on postjudgment appeal." *Bd. of Trs. of Internal Improvement Tr. Fund v. Am. Educ. Enters., LLC*, 99 So. 3d 450, 454 (Fla. 2012) (citations, alteration and internal quotation marks omitted).

Further, as with the review of any motion to dismiss, we look only to the four corners of the landowners' complaint, accept the landowners' allegations as true, and view all reasonable inferences arising therefrom in their favor. *See Peterson v. Pollack*, 290 So. 3d 102, 105, 109 (Fla. 4th DCA 2020) ("[I]n reviewing a motion to dismiss, a court may not go beyond the four corners of the complaint and must accept the allegations therein as true, viewing all reasonable inferences arising therefrom in favor of the plaintiff.") (citation omitted).

Under Florida common law, absolute immunity for words spoken or written by public servants—however false, malicious, or badly motivated the words may be—extends to public servants in judicial and legislative

activities, and to county and municipal officials in legislative or quasi-legislative activities. *Hauser v. Urchisin,* 231 So. 2d 6, 8 (Fla. 1970).

Our supreme court has described the basis for common law absolute immunity as follows:

> [Common law absolute immunity is] based chiefly upon a recognition of the necessity that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interests. To accomplish this, it is necessary for them to be protected not only from civil liability, but also from the danger of even an unsuccessful civil action. To this end, it is necessary that the propriety of their conduct not be inquired into indirectly by either court or jury in civil proceedings brought against them for misconduct in their position. Therefor[e] the privilege, or immunity, is absolute and the protection that it affords is complete. [The immunity] is not conditioned upon the … absence of ill will on the part of the actor.

*Fridovich v. Fridovich,* 598 So. 2d 65, 68 (Fla. 1992) (quoting Restatement (Second) of Torts § 584, at 243) (emphasis omitted).

Adding to our supreme court's description of the basis for common law absolute immunity, we have described the controlling factor in deciding when common law absolute immunity applies:

> The controlling factor in deciding whether the absolute privilege applies is whether the communication was within the scope of the [public official's] duties. The scope of [a public official's] duties is to be liberally construed. The term "duties" is not confined to those things required of the [public official], but rather extends to all matters which [the public official] is authorized to perform. Because the balancing of interests favors the public official, it is considered better to leave unredressed the wrongs done by dishonest [public officials] than to subject those who try to do their duty to the constant dread of retaliation.

*Cassell v. India,* 964 So. 2d 190, 194 (Fla. 4th DCA 2007) (internal citations and other quotation marks omitted). *See also Cameron v. Jastremski,* 246 So. 3d 385, 387-88 (Fla. 4th DCA 2018) ("Conduct is within the scope of one's employment if it is the type of conduct which the

9

employee is hired to perform, the conduct occurs substantially within the time and space limits authorized or requested by the work to be performed, and the conduct is activated at least in part by a purpose to serve the employer.") (citations omitted).

Here, we agree with the public official's argument that, as pled in the landowners' complaint, her alleged tortious interference occurred in the scope of her duties as an IRC member and as its chair.

More specifically, as pled in the landowners' complaint, the IRC's duty was to ensure the landowners' proposed construction:  (i) would not adversely affect the public interest; and (ii) would conform with the Town's neighborhood character.  In our reading of the landowners' complaint, and accepting the landowners' allegations as true, the public official's actions were indeed driven to serve those ends—albeit using false, malicious, and badly-motivated means to accomplish those ends.

Further, as pled in the landowners' complaint, the public official's duties, as the IRC chair, included:  (i) helping other IRC members gather information to support or deny an application; (ii) setting the agenda, timing, and tone of any hearing; (iii) controlling the timing and participation of individuals at any hearing; (iv) testing other IRC members' viewpoints and shifting viewpoints of a hearing into a certain direction; and (v) delaying any hearing if she deemed it necessary.  In our view, all of the actions which the landowners' complaint alleges the public official undertook—in an attempt to delay or defeat the landowners' construction applications—fall under those duties, regardless of whether those actions occurred outside of, or during, an IRC meeting, and however false, malicious, or badly motivated those actions may have been.

At its core, the landowners' tortious interference action ultimately focuses on the public official's multiple failures to disclose, and her multiple false representations regarding, her ex parte communications regarding the landowners' construction applications.  However, as our supreme court made clear in *Hauser* and *Fridovich*, the landowners' allegations that the public official falsely and repeatedly stated she had not engaged in ex parte communications regarding the landowners' construction applications is <u>not relevant</u> to whether those actions occurred in the scope of her duties as an IRC member and as its chair.  *Hauser*, 231 So. 2d at 8; *Fridovich*, 598 So. 2d at 68.  As we held in *Cassell*, the fact that the public official had the authority—as an IRC member and as its chair—to address the landowners' construction applications was sufficient to bring her statements within the scope of her duties, regardless of whether those statements were false.  964 So. 2d at 195.  Further, the fact

that the landowners may view the public official's statements as having an unworthy or non-public purpose does not destroy her common law absolute immunity. *Id.*

In sum, we conclude the public official has demonstrated that the circuit court's order denying her motion to dismiss based on common law absolute immunity constitutes: (1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case, (3) that cannot be corrected on postjudgment appeal.

Thus, we grant the public official's certiorari petition in case number 4D22-1007. We direct the circuit court, on remand, to vacate its prior order and issue a final judgment granting the public official's motion to dismiss the landowners' action against her with prejudice based on common law absolute immunity. *See Blake v. City of Port Saint Lucie*, 73 So. 3d 905, 907 (Fla. 4th DCA 2011) ("We conclude that dismissal with prejudice can occur at the pleading stage where, as here, the plaintiff alleges that the public official made the statements within the scope of the official's duties.").

### 3. Our Rule 9.130 Review of the Section 768.28(9)(a) Immunity Argument

As stated above, to the extent our granting the public official's certiorari petition in case number 4D22-1007 may be subject to review, we shall proceed with our rule 9.130 review in case number 4D22-1030, to consider whether the public official was entitled to dismissal at the pleading stage for immunity under section 768.28(9)(a), Florida Statutes (2020).

For that issue, our standard of review is de novo. *See Peterson*, 290 So. 3d at 108 (whether a state employee or agent is entitled to section 768.28(9)(a) immunity is a pure question of law reviewed de novo) (citation omitted); *Execu–Tech Bus. Sys., Inc. v. New Oji Paper Co.*, 752 So. 2d 582, 584 (Fla. 2000) ("A trial court's ruling on a motion to dismiss based on a question of law is subject to de novo review."). Again, we look only to the four corners of the landowners' complaint, accept the landowners' allegations as true, and view all reasonable inferences arising therefrom in their favor. *Peterson*, 290 So. 3d at 109.

Section 768.28(9)(a) provides:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage

11

suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, *unless such officer, employee, or agent acted in bad faith or with malicious purpose* or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

§ 768.28(9)(a), Fla. Stat. (2020) (emphasis added).

Section 768.28(9)(a) immunity can extend to appointed municipal committee members—such as the public official in this case—if section 768.28(9)(a)'s requirements are satisfied. *See* § 768.1355(3), Fla. Stat. (2020) ("Members of elected or appointed boards, councils, and commissions of the state, counties, municipalities, authorities, and special districts shall incur no civil liability and shall have immunity from suit as provided in s. 768.28 for acts or omissions by members relating to members' conduct of their official duties. …").

Because we already have concluded the landowners' complaint facially pleads that the public official's alleged tortious interference actions occurred in the scope of her official duties, the issue remaining before us is whether the landowners' complaint sufficiently alleged that the public official nevertheless acted "in bad faith" or "with malicious purpose," thus precluding the public official from obtaining dismissal at the pleading stage based on immunity under section 768.28(9)(a). The issue of whether the public official acted "in a manner exhibiting wanton and willful disregard of human rights, safety, or property" is not before us.

We initially acknowledge that the landowners' complaint does not expressly use the section 768.28(9)(a) phrases "in bad faith" or "with malicious purpose" to characterize the public official's alleged actions. Instead, the landowners' complaint, after specifying the public official's alleged actions, summarizes that the public official "acted with malice and used improper means and methods" to interfere with the landowners' business relationships.

However, we do not view the complaint's non-use of the section 768.28(9)(a) phrases "in bad faith" or "with malicious purpose" as causing the complaint to have been insufficiently pled. Rather, viewing all reasonable inferences arising from the landowners' complaint in their favor, we consider whether the landowners' allegations could demonstrate that the public official acted "in bad faith" or "with malicious purpose" to preclude section 768.28(9)(a) immunity. *See Peterson*, 290 So. 3d at 110 (concluding that although the plaintiffs' amended complaint contained no specific allegation describing how a deputy's conduct fit those synonymous

phrases, "we can foresee how a reasonable trier of fact could find that the deputy's alleged conduct, in certain respects, meets those standards").

As we have previously observed, "the Florida Statutes do not define the phrases 'in bad faith' or 'with malicious purpose' … as those phrases are used in section 768.28(9)(a)." *Id.* at 109. But we have recognized that "[t]he phrase 'bad faith,' as used in section 768.28(9)(a), has been equated with the actual malice standard." *Id.* (citation and other internal quotation marks omitted). And we have recognized that "[t]he phrase 'malicious purpose,' as used in section 768.28(9)(a), has been interpreted as meaning the conduct was committed with ill will, hatred, spite, [or] an evil intent." *Id.* (citation and other internal quotation marks omitted). "Or perhaps stated more simply, the subjective intent to do wrong." *Id.* (citation and internal quotation marks omitted).

Applying those definitions to the allegations contained in the four corners of the landowners' complaint, the complaint sufficiently pleads the public official acted "in bad faith" or "with malicious purpose," thus precluding the public official from obtaining dismissal at the pleading stage based on immunity under section 768.28(9)(a). According to the complaint:

- Although the public official was aware the landowners' applications had satisfied the IRC's approval criteria, the public official allegedly embarked upon a series of acts with her three co-conspirators to delay the landowners' applications and interfere with their relationships with their retained professionals.

- Those alleged acts included spreading a false narrative surrounding the landowners' applications so that the public official could delay approval and increase the landowners' costs; emailing Testa, for apparent quid pro quo, to ask if she and her husband would make a substantial cash donation to an environmental organization with which the public official was involved; and directing Testa and Geddes to engage in a second letter-writing campaign, which letters made allegedly false statements that the landowners' planned construction would destroy beach dunes on their parcels and would cause severe environmental harm to the Town.

- Lastly, the public official—at three separate IRC meetings—failed to disclose, and instead falsely stated, she had not had any ex parte communications regarding the landowners' construction applications. Even though the IRC ultimately voted to approve the construction applications, the public official's timely prior disclosure

13

of such ex parte communications would have allowed the landowners to seek to disqualify the public official for bias before having their construction applications determined.

Based on the foregoing, the landowners' complaint sufficiently alleged the public official's actions showed "the subjective intent to do wrong," i.e., that she acted "in bad faith" or "with malicious purpose." *Peterson*, 290 So. 3d at 109. Thus, we conclude the public official was not entitled to dismissal at the pleading stage based on immunity under section 768.28(9)(a).

Our conclusion is consistent with our prior opinion in *Palazzo Las Olas Group LLC v. City of Fort Lauderdale*, 966 So. 2d 497 (Fla. 4th DCA 2007). In *Palazzo*, the appellant developer appealed from a circuit court order dismissing the developer's complaint against, among others, various public officials in their individual capacities. *Id.* at 498. Three of the counts sought damages for tortious interference with contract, tortious interference with an advantageous business relationship, and conspiracy. *Id.* at 500. The counts were based on allegations that after the city had accepted the appellant's development proposal, and after the developer had spent over two years and $5 million in reliance on the city's action, the various public officials, "as a consequence of a changing political climate … undertook efforts to derail the Project, including efforts … to delay the … vote on the site plan until after the elections … [as well as] purposely and in bad faith routinely confus[ing] and switch[ing] their respective roles in accomplishing a grossly improper objective." *Id.* at 499 (internal quotation marks omitted).

The public officials filed a motion to dismiss. *Id.* at 500. They insisted the tortious interference and conspiracy claims could not stand for two reasons: "(1) because [those claims] were predicated upon the [public officials'] actions in voting at a public meeting and such actions constituted the exercise of quasi-judicial powers and were thus absolutely immune, … and (2) because section 768.28(9)(a), Florida Statutes, affords government officers, agents, and employees immunity from suit unless their actions are taken in 'bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property' and the complaint failed to adequately allege such bad faith or malicious purpose." *Id.* at 502-03 (internal citations omitted).

The circuit court dismissed the tortious interference and conspiracy counts, finding that, as a matter of law, those counts' allegations "[did] not arise to the level of bad faith, malicious purpose or a manner exhibiting wanton and willful disregard of human rights, safety or property," i.e., the

level of bad faith necessary to avoid section 768.28(9)'s sovereign immunity." *Id.* at 500.

On appeal, we reversed that finding, reasoning:

> We have reviewed the complaint's allegations and find them minimally sufficient to allege the kind of bad faith and malicious purpose necessary to seek to impose individual liability. The [public officials'] alternative claim that [the tortious interference and conspiracy] counts … must fail as they are predicated upon the [public officials'] actions in voting at a public meeting is also insufficient to support the dismissal of the counts as *the claims are not predicated solely upon the act of voting.*

*Id.* at 503 (emphasis added).

Consistent with our reasoning in *Palazzo*, we have reviewed the landowners' complaint here, and find their allegations sufficient to have alleged the kind of "bad faith" and "malicious purpose" necessary to seek to impose individual liability against the public official for tortious interference. The fact that some of the landowners' allegations were predicated upon the public official's actions outside of voting at a public meeting does not support the public official's attempt to obtain dismissal at the pleading stage based on immunity under section 768.28(9)(a).

We note that *Palazzo*'s application to this case is limited to the issue of whether the public official was entitled to dismissal at the pleading stage under section 768.28(9)(a). *Palazzo* cannot be applied to determine whether the public official was entitled to dismissal at the pleading stage based on common law absolute immunity. Although we observed in *Palazzo* that the public officials had argued they also were entitled to dismissal at the pleading stage based on common law absolute immunity, our opinion did not state whether the circuit court had ruled on that argument, nor did our opinion comment on the merits of that argument.

### *Conclusion*

In sum, we conclude the public official was entitled to dismissal at the pleading stage based on common law absolute immunity because, as pled in the landowners' complaint, her alleged tortious interference occurred in the scope of her official duties. We therefore grant the public official's certiorari petition in case number 4D22-1007. As stated above, we direct the circuit court, on remand, to vacate its prior order and issue a final

judgment granting the public official's motion to dismiss the landowners' action against her with prejudice based on common law absolute immunity.

Our holding in case number 4D22-1007—that the public official was entitled to dismissal with prejudice at the pleading stage based on common law absolutely immunity—moots the public official's argument in case number 4D22-1030 for immunity under section 768.28(9)(a). However, to the extent our common law absolute immunity holding in case number 4D22-1007 may be subject to review which necessitates our reaching the merits in case number 4D22-1030, our holding in case number 4D22-1030 would have been that the public official was not entitled to dismissal at the pleading stage for immunity under section 768.28(9)(a).

We make two final points for clarity's sake in issuing this opinion.

First, in neither case number 4D22-1007 nor case number 4D22-1030 have we reached the issues of whether the landowners' complaint stated a cause of action for tortious interference, or whether such a cause of action would have been meritorious. Nothing in this opinion should be construed as commenting on those issues.

Second, earlier in these cases, we accepted Testa's notice of joinder and permitted Testa to either file briefs limited to supporting the public official's petition, or formally adopting the public official's petition. Testa chose to file briefs. However, Testa's briefs went beyond supporting the public official's petition, by requesting us to direct the circuit court to dismiss the action with prejudice as to all defendants, including her. Testa argued that precluding the landowners from pursuing their tortious interference action against the public official would derivatively preclude the landowners from pursuing their individual conspiracy actions against Testa, Geddes, and Brooks. *See, e.g.*, *Palm Beach Cnty. Health Care Dist. v. Pro. Med. Educ., Inc.*, 13 So. 3d 1090, 1096 (Fla. 4th DCA 2009) ("An act which does not constitute a basis for an action against one person cannot be made the basis of a civil action for conspiracy."). However, we cannot consider Testa's request, because the circuit court has not reviewed such a request in the first instance. Our opinion is without prejudice to Testa (or the other defendants) making this request to the circuit court on remand. Nothing in this opinion should be construed as commenting on the merits of that request.

*Certiorari petition granted in case number 4D22-1007; non-final appeal in case number 4D22-1030 dismissed as moot.*

16

LEVINE and CONNER, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***